HONSINGER (GOODYEAR v.). See Case No. 5,572.

HOOD (COLLINS v.). See Case No. 3,015.

HOOD (GRAYDON v.). See Case No. 5,732.

## Case No. 6,664.
### HOOD et al. v. KARPER et al.

[5 N. B. R. 358;[1] 8 Phila. 160; 28 Leg. Int. 340.]

Circuit Court, E. D. Pennsylvania. Oct. 25, 1871.

BANKRUPTCY — INVOLUNTARY — BILL TO PREVENT EXECUTION—CONFESSION OF JUDGMENT.

1. Where only one subject of an intended execution can have been in view of the parties to

[1] [Reprinted from 5 N. B. R. 358, by permission.]

a confessed judgment, a levy made accordingly on that subject and a sale of it by the sheriff, though constituting in form an involuntary transfer is indirectly transfer or disposition of the property by the debtor.

2. An intended security which would be ineffectual in the form of a mortgage or bill of sale, cannot be rendered effective through the device of a warrant of attorney given by a trader to a creditor, which enables him at pleasure to stop the debtor's business and prevent other creditors from getting any share of his available assets.

3. A confession of judgment, if otherwise invalid under the thirty-fifth section of the bankrupt act [of 1867 (14 Stat. 534)], cannot be valid for any such reason as, that the power of attorney bore date more than four or six months before any actual mortgage or transfer.

[Cited in Zahm v. Fry, Case No. 18,198; Johnson v. Price, Id. 7,407.]

4. Where an execution must necessarily stop the debtor's business, the execution creditor, as a rule, has reason to believe the debtor insolvent, and in general intends what, if not prevented, would be a fraud on the provisions of the bankrupt law.

Bill at the suit of the petitioning creditors of an involuntary bankrupt merchant or trader, on behalf of themselves and the other creditors, to the intent that the assignee, when qualified, might be added or substituted as complainant. The purpose of the bill was to prevent a creditor from proceeding with an execution levied upon the stock in trade of the bankrupt. The execution was upon a judgment confessed by the bankrupt under a warrant of attorney. The warrant was dated more than six months, but the judgment was confessed within four months before the filing of the petition in bankruptcy. The judgment had not been an available security, as a lien upon real estate, or available in anywise except through such an execution as might be thus levied on the debtor's stock in trade; and was for such an amount of money as could not have been levied without closing his business and absorbing his available assets. The consideration of the judgment was not impugned. The warrant of attorney had been a renewal of, or substitute for, one originally given before the enactment of the present bankrupt law. A preliminary injunction having been granted, the subjects of the levy were sold under an order of this court, made by consent. The sale was under the direction of a commissioner specially appointed by the court; and the proceeds were brought into the registry of the court; all this having been done with a saving of any rights of the execution creditor, whose lien, if established, was to stand good upon the fund in court, and to avail him against the assignee in bankruptcy, &c. The thirty-fifth section of the bankrupt law of 2d March, 1867, enacts, that if any person being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, * * * makes any * * * transfer * * * of any part of his property, either directly or indirectly * * * the person receiving such * * * transfer, * * * or to be benefited thereby, * * * having reasonable cause to believe such person is insolvent, and that such * * * assignment * * * is made in fraud of the provisions of this act, the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it, or so to be benefited; and if any person, being insolvent, or in contemplation of insolvency or bankruptcy, within six months before the filing of the petition by or against him, makes any * * * transfer * * * or other disposition of any part of his property to any person who then has reasonable cause to believe him to be insolvent, or to be acting in contemplation of insolvency, and that such * * * transfer or other conveyance is made with a view to * * * defeat the object * * * of this act, the * * * transfer or conveyance shall be void, and the assignee may recover the property, or the value thereof, as assets of the bankrupt. And if such * * * assignment, transfer or conveyance is not made in the usual and ordinary course of business of the debtor, the fact shall be prima facie evidence of fraud. The thirty-ninth section, after defining the cases in which a person may be involuntarily adjudged a bankrupt, upon a petition against him brought within six months after the act of bankruptcy, concludes with a provision which, as amended by congress on 27th July, 1868 [15 Stat. 227], is that, if such person be adjudged a bankrupt, the assignee may recover back the money or other property so paid, conveyed, sold, assigned or transferred, contrary to the original act: provided, the person receiving such payment or conveyance had reasonable cause to believe that a fraud on the act was intended, and that the debtor was insolvent; and such creditor shall not be allowed to prove his debt in bankruptcy. At the October sessions of 1871, the case was heard upon bill, answer, replication and proofs; and was argued by Mr. Patton, for the complainants, and Mr. Sharp for the execution creditor, defendant. The questions argued were: (1) Whether, if the sale by the sheriff had not been prevented by the injunction, the confession of judgment, execution, levy and sale, would, within the meaning of the thirty-fifth section, have constituted an indirect transfer of the property, with a view to give a preference. (2) Whether the same acts would, under the same section, have constituted a transfer or other disposition, with a view to defeat the object of the bankrupt law. (3) Whether, if either of the former questions were answered affirmatively, the transfer or disposition was made at the date of the warrant, or at or after the time of confessing the judgment. (4) Whether, from the warrant of attorney, confession of judgment, execution and levy,

the execution creditor had reasonable cause to believe that the debtor was insolvent, and that the proceedings were in fraud of the provisions of the bankrupt act.

J. W. Patton, for complainants.

W. S. Stenger, F. M. Kimmel, and J. McDowell Sharpe, for defendants.

CADWALADER, District Judge. First. By the express language of the thirty-fifth section of the act of congress, the objectionable transfers described in that section are voidable alike whether made "directly or indirectly." Where only one subject of an intended execution can have been in view of the parties to a confessed judgment, a levy made accordingly on that subject, and a sale of it by the sheriff, though constituting in form an involuntary transfer, is indirectly a transfer or disposition of the property by the debtor. This needs no demonstration. If the proposition required the support of authority, it might be found in judicial opinions, at law and in equity, upon cases of leases on a condition that the term shall cease if assigned. In such cases, an involuntary transfer of the term under an execution, though it may have been levied under a judgment confessed by the lessee upon a warrant of attorney, is not a breach of the condition. But where the judgment appears to have been thus confessed with an intent of both parties that the term should be taken in execution, and thus transferred, the transfer is not considered involuntary, and the condition is broken. The defendant who could not make an effectual transfer directly, cannot make it indirectly.

Second. In England, independently of any question of preference, a transfer of the whole available property of a bankrupt trader may be voidable at the suit of his assignee from the necessary tendency of such a transfer to defeat the object of the bankrupt law. In the United States, under the words of the act of 2d March, 1867, there is less difficulty in so annulling such a transfer. The most beneficial purposes of the bankrupt law would be frustrated, if an intended security which would be ineffectual in the form of a mortgage or bill of sale, could be made effectual through the device of a warrant of attorney given by a trader to a creditor, enabling him at pleasure to stop the debtor's business and prevent the other creditors from getting any share of his available assets. It has been urged that a capitalist should be able, by advancing his money, or lending his credit, to promote commercial enterprise without insecurity as to reimbursement. The protection to which capitalists are thus entitled, should not, however, be so extended as to encourage them in the promotion of fraudulent overtrading by debtors to the sacrifice of other meritorious interests.

Third. The next question is, at what time the objectionable disposition or transfer was made or attempted; whether at the date of the warrant of attorney, or at or after the time of confessing the judgment. Here we may consider the confession of judgment, the execution, the levy and the sale, or attempted sale, as together constituting a single act to effectuate the transfer. It is argued that the transfer, though it was to be thus effected, was made through or by means of the warrant which was anterior. This undoubtedly is true. But it is not a consequence of these premises that the transfer was made at the date of the warrant. We concur in opinion with the judge of the Northern district of Illinois, that the preference by means of a judgment note is obtained, not with the note when a warrant of attorney to confess judgment is executed and delivered, but when it is executed by the entry of the judgment. The power, as he says, until thus executed, is dormant, and, in most cases, secret. Goldson v. Niehoff [Case No. 5,524]. The act of confessing the judgment is the debtor's act. It is true that this act is done by virtue of his warrant of attorney. But the attorney's act in confessing the judgment is that of his principal, the debtor. The warrant is of no effect until the power conferred by it is thus executed. If the debtor dies in the meantime, it is, from first to last, wholly inoperative. The case, in principle, is, in this respect, the same as if the debtor had given a power of attorney to execute a mortgage or other security, for a particular creditor's benefit. Such a power, even when irrevocable, does not, while unexecuted, constitute a mortgage or transfer of any kind. When the power is executed, the mortgage or transfer which thereby occurs, if otherwise invalid under the thirty-fifth section of the bankrupt act, cannot be valid for any such reason as that the power of attorney bore date more than four months, or more than six months, before any actual mortgage or transfer. It is contended that, in this case, the warrant of attorney having been a renewal of or substitute for a like warrant held by this creditor before the enactment of the present bankrupt law, must, in equity, be considered as having been given before its enactment. We think so. But this cannot be material, unless we are mistaken in the above opinion that the indirect transfer or disposition cannot be referred to the date of the warrant of attorney. If the nonexistence of a bankrupt law, at the date of such a warrant, might have suggested peculiar considerations under the bankrupt act of 1841, it may be observed that the phraseology of the act of 1867 is studiously different.

Fourth. Where an execution must necessarily stop the debtor's business, the execution creditor, in general, has reason to believe the debtor insolvent; and, in general, intends what, if not prevented, would be a fraud on the provisions of the bankrupt law. There is nothing in this case to take it out of the rule. For these reasons we are of opinion that if the assignee in bankruptcy was the complain-

ant, and the case had been ripe for a final decree, the bill would be sustainable. The reasons under the first, second and fourth heads will be understood as limited in their present application to the bankruptcy of a merchant or trader. Moreover, they do not apply to a judgment confessed, even by a merchant or trader, which, being otherwise unobjectionable in bankruptcy, is an available security as a lien upon real estate. Judgments of this kind, under warrants of attorney, may be innocent and useful securities. Nor, where a merchant or trader has no available real estate, are judgments confessed by him under warrants of attorney always necessarily objectionable. They may be for amounts comparatively small, so that executions on them would not stop his business. Their validity, as against an assignee in bankruptcy, may then depend, in some cases, on the question whether the creditor would have received a preference if he had taken a mortgage or bill of sale instead of the warrant of attorney. But the bill of sale, or mortgage, if not secret or unaccompanied by possession, may be the less questionable security. A warrant of attorney by a merchant or trader, though not always invalid, even where given within four months of his bankruptcy, must always be regarded with more or less disfavor in a commercial tribunal, such as a court of bankruptcy. There cannot be a final decree until the assignee in bankruptcy shall have become a party complainant. In consequence of the delay in this respect the bill would have been dismissed, if its dismissal had been asked on the part of the defendant, unless collusion with him by an assignee could be shown, or the delay could be otherwise explained or excused. As yet no assignee has been qualified. This may seem extraordinary. But the defendant's counsel admits that the delay is excusable, though its causes have not been fully explained. Although the execution creditor's proceeding was "in fraud of the provisions of the bankrupt act," the case was one of relative or constructive, not of actual fraud. The entry of a final decree against him would therefore, at all events, have been suspended for a brief period, after the above declaration of our opinion. He should, in equity, have a reasonable opportunity of considering whether to surrender his claim under the execution, prove his debt in the court of bankruptcy, and pay all the costs in this court and the charges incurred, or consent that they be deducted from his dividend of the money in court. But his decision must precede a final decree. After it, proof by him could not be allowed.

The District Judge added: The above opinion was concurred in by McKENNAN [Circuit Judge], on the 19th instant, before he left Philadelphia. The concluding provision of the thirty-ninth section of the bankrupt act of 2d March, 1867, as amended by the act of 27th of July, 1868, though not expressly quoted, was fully considered, as the opinion shows. That provision is in effect supplementary to the thirty-fifth section. The other enactments of the thirty-ninth section were not mentioned, because they only define the acts of a debtor for which he may be involuntarily adjudged a bankrupt. The decision of the case depended on the thirty-fifth section, which defines acts that may render other persons liable to actions at the suit of the assignee for the recovery of assets. But references to the thirty-ninth section occasionally facilitate the interpretation of the thirty-fifth; and it has occurred to me that the third of the questions which have been considered may be further elucidated by a comparison of the two sections upon one point. This question was, whether, under the thirty-fifth section, the objectionable disposition of property is at the date of the warrant, or at that of the confession of judgment. The thirty-ninth section makes the mere giving, under certain circumstances, of a warrant to confess judgment within six months before an adversary petition, an act of involuntary bankruptcy. This applies to the debtor only. The thirty-fifth section, of which the enactments affect other persons, does not mention such a warrant at all. Thus the creditor who has the warrant of attorney is never affected injuriously by merely having received it. The reason of the difference may be obvious, but is not therefore less applicable. The subsequent use of the warrant of attorney can alone give rise to any question so far as he may be concerned. To exempt him, by reason of its date, from all consequences for such subsequent use of it, would therefore seem incongruous. This may furnish a reason additional to those already given, that the date of the warrant is not the time of the objectionable disposition. If the decision of the present case had, under the thirty-fifth section, depended upon the question whether the debtor, within four months before the petition, procured the property to be seized on the execution, we would have been of opinion, that mere passive submission by him, without any direct promotion of the creditor's action, or any insidious artful omission tending indirectly to promote it, within the four months, was not such procurement. We do not decide the case on this point.